**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be received no later than 4:30pm on the 10th day after the decision was issued to be deemed timely filed.
https://www.gaappeals.gov/rules

**August 5, 2026**

# In the Court of Appeals of Georgia

A26A1194. JONES v. THE STATE.

DILLARD, Presiding Judge.

After a trial by jury, Jason Jones was convicted of possessing methamphetamine with intent to distribute and trafficking methamphetamine. Before trial, Jones moved to suppress evidence recovered from a traffic stop, but the trial court denied the motion. Now, Jones argues the court erred in doing so when (1) the stop was not based on reasonable, articulable suspicion, and (2) the statements he made were not voluntary and did not provide law enforcement with probable cause to search his vehicle. For the following reasons, we affirm.[1]

---

[1] Jones failed to provide record citations that conform with this Court's rules, which provide as follows: "Reference to an electronic record should be indicated by the *volume number of the electronic record and the PDF page number* within that volume (Vol. Number – PDF Page Number; for example, V2-46)." Ct. App. R. 25(d)(2)

When we review the denial of a motion to suppress evidence, we construe the evidence "most favorably to uphold the ruling of the trial court."[2] In doing so, we review the court's application of law to undisputed facts *de novo*,[3] and examine "not only the evidence in the record of the hearing on the suppression motion, but also the evidence from the trial."[4] Importantly, when a motion to suppress is considered by the trial court, it sits as "the trier of facts," and the court's decision as to "questions of fact and credibility must be accepted unless clearly erroneous."[5]

So viewed, the record shows that on July 17, 2024 (just as he was being stopped for a suspected traffic violation), Jones called Georgia Bureau of Investigation Agent

(emphasis added). We remind counsel that our rules were not created to "provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this [C]ourt." *Cook v. Smith*, 349 Ga. App. 16, 16(1) (825 SE2d 439) (2019) (quotation marks omitted).

[2] *Valles v. State*, 357 Ga. App. 167, 167 (850 SE2d 212) (2020) (punctuation omitted). Accord *State v. Allen*, 298 Ga. 1, 2(1)(a) (779 SE2d 248) (2015).

[3] *Valles*, 257 Ga. App. at 167 (punctuation omitted). Accord *Mizell v. State*, 304 Ga. 723, 727(2) (822 SE2d 211) (2018).

[4] *Valles*, 257 Ga. App. at 167 (punctuation omitted). See generally *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993) (considering both the transcript of the hearing on the motion to suppress and the trial transcript).

[5] *Valles*, 257 Ga. App. at 167 (punctuation omitted). Accord *Allen*, 298 Ga. at 2(1)(a).

Stephen Pendergrass. Jones did so because Pendergrass provided him with his phone number a few months before when Jones expressed interest in acting as a confidential informant; but since then, the two had fallen out of touch.[6] Jones told Pendergrass that he was being illegally stopped and stated that he was willing to assist him in drug investigations.

What Jones did not know when he called Pendergrass is that a confidential informant (CI) provided Pendergrass with information about *him* earlier that day, and Pendergrass was watching the traffic stop from a nearby vantage point. More precisely, Pendergrass was contacted by a CI who previously provided him with reliable information leading to four or five drug-related arrests. And on this day, the CI told Pendergrass that Jones picked up a half kilogram of methamphetamine in the Atlanta area and was now returning to the North Georgia area in his Toyota Tacoma truck. This same CI also gave Pendergrass a photograph of Jones's license plate on the truck. Pendergrass was already familiar with Jones's use of the truck, but he verified that the vehicle provided by the informant was indeed registered to Jones. According

---

[6] Pendergrass first met Jones at a residence where a Fourth Amendment-waiver search occurred.

to the CI, on the day in question, Jones would be traveling to his girlfriend's apartment complex on Peanut Lane in Catoosa County.

As a result of this information, Pendergrass and law-enforcement officers from the Catoosa County Sheriff's Office surveilled the apartment complex, and—when they saw Jones leave in his Toyota Tacoma—they initiated a traffic stop. This is when Jones called Pendergrass to offer his services as a CI. But Pendergrass immediately ended the call because he could hear deputies trying to speak with Jones. The deputies believed Jones was acting nervously—*i.e.*, he kept trying to use his phone and refused to exit the vehicle when asked to do so. He was eventually removed from the truck and placed in handcuffs while a K-9 free-air sniff of the vehicle was conducted. The deputies told Jones that he was not under arrest but merely being detained.

The free-air sniff did not result in any alerts from the K-9, and when Pendergrass arrived soon after, he asked Jones if he knew why he was there. Jones answered affirmatively, and then asked to speak with Pendergrass. Pendergrass told Jones they could talk but only after he discussed the drugs in his vehicle. Jones then admitted having drugs in the vehicle. After this disclosure, Pendergrass arrested Jones

and gave him a *Miranda* warning,[7] at which point Pendergrass shared other information about the drugs he was transporting—including where they were in the vehicle. Law enforcement searched the vehicle and recovered five to six bags containing one ounce each of methamphetamine, digital scales, smoking devices, and other drug-related objects.

This appeal follows the denial of Jones's motion to suppress the evidence recovered from the traffic stop, the jury's conviction, and the court's denial of his motion for new trial.

1. Pendergrass first claims that law enforcement lacked reasonable, articulable suspicion to stop his vehicle based solely on the information from the CI. We disagree.

To begin with, the trial court found that law enforcement's pretextual reason for initiating the traffic stop—due to a suspected failure to maintain lane—was invalid and so the officer incorrectly initiated a stop on that ground. Even so, the court found

---

[7] See *Miranda v. Arizona*, 384 US 436, 444–45(III) (86 SCt 1602, 16 LE2d 694) (1966) (holding that the Fifth Amendment to the United States Constitution bars the admission of an accused's statements made during a custodial interrogation, unless he first is advised of and voluntarily waives his right to remain silent and not incriminate himself). See also U. S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself ... ."); Ga. Const. Art. I, Sec. I, Par. XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

that law enforcement had reasonable, articulable suspicion to stop Jones's truck because of the information given by the CI earlier in the day. It is this conclusion Jones challenges; and so the question before us is whether the officers had reasonable, articulable suspicion to justify an investigatory stop of Jones's vehicle based on the CI's information.

A law-enforcement officer may conduct a "constitutional investigatory stop of an individual when the officer is able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion."[8] In this regard, "reasonable suspicion" is a "less demanding standard than probable cause."[9] And importantly, reasonable, articulable suspicion is established

---

[8] *Garmon v. State*, 271 Ga. 673, 676(2) (524 SE2d 211) (1999) (quotation marks omitted). See *Garza v. State*, 298 Ga. App. 332, 333 (680 SE2d 175) (2009) ("An officer may make a brief, investigatory stop of a vehicle when he has a reasonable, articulable suspicion that the person stopped has been, or is about to be, engaged in criminal activity.").

[9] *State v. Jones*, 287 Ga. App. 259, 260 (651 SE2d 186) (2007). Accord *Parker v. State*, 307 Ga. App. 61, 62(1) (704 SE2d 438) (2010). See also *Alabama v. White*, 496 U.S. 325, 330 (110 SCt 2412, 110 LE2d 301) (1990) (explaining that reasonable suspicion can be established "with information that is different in quantity or content than that required to establish probable cause"); *State v. Newsom*, 319 Ga. 607, 615 n.4 (905 SE2d 618) (2024) ("Because probable cause is a more stringent standard than reasonable suspicion, probable cause can justify a traffic stop."); *Bothwell v. State*, 250 Ga. 573, 576(2) (300 SE2d 126) (1983) (explaining that "reasonable suspicion" to

when, "under the totality of the circumstances, the investigatory stop [is] justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[10] But even the higher standard of *probable cause* can be established from information provided by a CI. Indeed, both this Court and the Supreme Court of Georgia have explained that, in general, probable cause is "determined by the totality of the circumstances surrounding (1) the basis of the [CI's] knowledge and (2) the [CI's] veracity or reliability."[11] And should there be a "deficiency in one, it may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[12]

Here, the CI previously provided reliable information to Pendergrass, resulting in multiple drug-related arrests. The CI also gave Pendergrass a photograph of Jones's

---

believe "criminal activity is afoot" is a less rigorous standard than "'probable cause' to believe that a particular crime has been committed (the probable-cause standard being required for a full-blown arrest)").

[10] *Wing v. State*, 327 Ga. App. 361, 362 (759 SE2d 243) (2014) (quotation marks omitted). Accord *Garmon*, 271 Ga. at 676(2).

[11] *Watson v. State*, 365 Ga. App. 113, 116(2)(a) (877 SE2d 678) (2022) (punctuation omitted). Accord *Bryant v. State*, 288 Ga. 876, 893(13)(a) (708 SE2d 362) (2011).

[12] *Watson*, 365 Ga. App. at 116(2)(a) (punctuation omitted). Accord *Bryant*, 288 Ga. at 893(13)(a).

license plate, which Pendergrass then verified. And on the day in question, the CI provided Pendergrass with Jones's name and gave him specific information about where he was going (an apartment complex where law enforcement later observed him), what he would be driving (the previously identified truck), and what he would be transporting (methamphetamine). So, there was sufficient evidence of the CI's reliability,[13] and the information *at the very least* gave officers reasonable, articulable

---

[13] See *Watson*, 365 Ga. App. at 116(2)(a) (holding there was sufficient evidence of CI's reliability when the CI "gave specific information regarding [appellant] by name, gave the time and place of the drug exchange, and described the car that [appellant] would be driving," the "factors were all corroborated through the officers' surveillance," and an "officer testified that the CI previously provided information to law enforcement that resulted in convictions and the seizure of illegal drugs"); *Anthony v. State*, 197 Ga. App. 297, 298(1) (398 SE2d 580) (1990) (deeming CI reliable because his information resulted in three or four prior arrests). Cf. *Heitkamp v. State*, 342 Ga. App. 674, 678(1) (804 SE2d 702) (2017) (holding that denial of motion to suppress was erroneous when officers did not testify that CI had a reputation for being truthful or reliable, and CI's description of perpetrator lacked specificity).

suspicion to initiate an investigatory stop of Jones's vehicle.[14] This enumeration of error, then, lacks merit.

2. Next, Jones contends the statements he made to Pendergrass could not provide probable cause for officers to conduct a warrantless search of his vehicle because they were not made voluntarily. Again, we disagree.

---

[14] See *Jones*, 287 Ga. App. at 261 (explaining that, although the circumstances "might not establish *probable cause*, they certainly gave the police reasonable suspicion to briefly detain [appellant] for investigatory purposes" when a "reliable source reported that a quantity of cocaine was located in [appellant's] truck" and an officer "confirmed much of the source's information before the traffic stop, including the description of [appellant's] vehicle and its general location" (emphasis omitted)); *Steed v. State*, 273 Ga. App. 845, 846–47(1) (616 SE2d 185) (2005) (holding that there was reasonable, articulable suspicion to stop vehicle when a known, reliable informant told investigators that two men had purchased drugs in a trailer park, were leaving in a gray pickup truck with two extra rear wheels (a "dually"), and were driving on a certain road toward a specific intersection); *Wilson v. State*, 249 Ga. App. 560, 562 (549 SE2d 418) (2001) (holding that there was a legal basis for traffic stop when a reliable confidential source informed investigators that two men were transporting drugs in a specific area and gave investigators the vehicle's color, make, model, and tag number); *Johnson v. State*, 230 Ga. App. 535, 537–38(1) (496 SE2d 785) (1998) (holding that there was reasonable, articulable suspicion to justify a traffic stop when a reliable confidential informant told investigators that the defendant had crack cocaine and was parked in a certain area, and gave investigators the van's color, make, model, and tag number). See also *Jackson v. State*, 295 Ga. App. 427, 431(3) (671 SE2d 902) (2009) (holding that when "a woman known to police ... correctly described [appellant] and where he would be found (confirmed by an officer), ... flagged down an officer, and ... stated to a police officer that [appellant] possessed cocaine," trial court correctly concluded that "the officers had probable cause to believe [appellant] was engaged in a drug-related offense").

9

For starters, Jones does *not* argue that his statements were involuntary because they were made without the benefit of a *Miranda* warning. Instead, he claims that his disclosure of drugs being in his vehicle was made to Pendergrass with the hope of benefit—*i.e.*, that any drug charges would be reduced or eliminated in exchange for acting as a CI. And under OCGA § 24-8-824, "[t]o make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

Here, Jones argues that Pendergrass gave him the hope of a benefit when he said he would speak with Jones but *only* after discussing the drugs in his vehicle (albeit only *suspected* to be in the truck at that point). And as recounted earlier, Jones previously spoke with Pendergrass about working with him as a CI. Then, when he was stopped on the day in question, Jones called Pendergrass to tell him that he was being "illegally stopped" and to again offer his services as a CI. But Pendergrass disconnected the call because he could hear law enforcement attempting to communicate with Jones. Pendergrass arrived at the stop shortly after that, approached Jones, and asked him if he knew why he was there. Pendergrass then told Jones they could "talk" but only

after addressing the drugs in the vehicle. Jones immediately disclosed that law enforcement would find drugs in the vehicle.

These circumstances do not violate OCGA § 24-8-824. If Jones revealed this information because he believed that he would face reduced or eliminated charges, his understanding was entirely *subjective* in nature because no overt promises were exchanged.[15] A statement by Pendergrass that he would speak with Jones—but only after discussing the drugs in his truck—cannot be *objectively* understood as a promise that he still wanted to work with Jones as a CI—much less a promise that Jones would face lesser or no charges.[16] So, because the statements were not given with the hope

---

[15] See *Tyson v. State*, 165 Ga. App. 22, 23(2) (299 SE2d 69) (1983) (holding that appellant's statements were voluntarily made when "no overt promises had been exchanged" and appellant's "understanding was subjective in nature," even though the statements were made to an officer with whom appellant had worked closely as a CI for up to 20 years and officer admitted that "*in his own mind* he felt he 'owed [appellant] something'" (emphasis supplied)). See also *Woodall v. State*, 294 Ga. 624, 629(4) (754 SE2d 335) (2014) ("While one of the officers interrogating appellant did tell him he could go home, such statements in context did not constitute a hope of benefit because no one promised appellant that he would not be charged with a crime or that he would receive reduced charges, sentencing or punishment if he made incriminating statements."), overruled on other grounds by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020).

[16] Cf. *Budhani v. State*, 306 Ga. 315, 328(2)(c) (830 SE2d 195) (2019) ("[U]nder the totality of the circumstances here, promises made by law enforcement to bring no additional charges against [appellant] constituted an impermissible hope of benefit.");

of benefit—which, again, is the only basis on which Jones challenges the voluntariness of the statements[17]—the trial court did not err in concluding the statements were made voluntarily. And after Jones informed Pendergrass that there were drugs in the

---

*State v. Chulpayev*, 296 Ga. 764, 771–72(2) (770 SE2d 808) (2015) (holding that appellant's statements were induced by FBI agent's repeated representations that he would protect appellant from going to jail and from a murder charge in particular, and thus such statements were not voluntary; and noting that agent, who had used appellant as a confidential informant, indicated that he was leading the investigation and would keep appellant "out of jail" and "make sure nothing happen[ed]" to him); *Canty v. State*, 286 Ga. 608, 609 (690 SE2d 609) (2010) (holding that appellant's statements to law enforcement were induced by a hope of benefit when, among other things, officer testified to telling appellant that if he worked with law enforcement, "the DA's office could work it altogether as one charge rather than putting them as separate charges," which the officer referred to as "shorter time"); *Foster v. State*, 283 Ga. 484, 488(2) (660 SE2d 521) (2008) ("Appellant made the statements that connected him to the murder weapon after being induced to do so by the written promise of the detectives to not press against appellant any additional charges related to the weapons. When appellant told the detectives the location of the gun and his role of providing the gun to his co-indictees, he did so in the hope of receiving no punishment for crimes related to his possession of the weapon.").

[17] As we have repeatedly explained, it is "inappropriate for this Court to speculate as to possible bases for reversal that might be lurking in the record but are not clearly articulated in the brief and supported by argument and citation to authority." *Collins v. Newman*, 237 Ga. App. 861, 861–62(1) (517 SE2d 100) (1999). See *Smyrna Dev. Co. v. Whitener Ltd. P'ship*, 280 Ga. App. 788, 790(2) n.3 (635 SE2d 173) (2006) (declining "to address any … issues that might be lurking in the record but are not specifically supported in the brief by argument and citation to authority" (punctuation omitted)).

truck, there was sufficient probable cause for law enforcement to search the truck for those same drugs.[18] As a result, this enumeration of error also lacks merit.

For these reasons, we affirm Jones's convictions.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

[18] See, e.g., *Rosales-Urrutia v. State*, 379 Ga. App. 203, 206 (926 SE2d 881) (2026) (holding that officer had probable cause to search vehicle because appellant, "when confronted by the officer about the smell of suspected burnt marijuana emanating from her vehicle, ... stated that she 'had smoked in the car recently'" (brackets omitted)); *O'Neal v. State*, 311 Ga. App. 102, 104(3) (714 SE2d 744) (2011) (holding that appellant's "statements that he possessed marijuana and had marijuana pipes in the truck gave the officers probable cause to suspect that the vehicle contained contraband, and therefore the [warrantless] search of the vehicle was lawful").